T.C. Memo. 1996-74

UNITED STATES TAX COURT

DOUGLAS A. VANDER HEIDE AND JANET VANDER HEIDE,
Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13745-95.                    Filed February 22, 1996.

Douglas A. Vander Heide and Janet Vander Heide, pro se.

Louise C. Pais, for respondent.

MEMORANDUM OPINION

NAMEROFF, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7443A(b)(4)[1] and Rules 180, 181, and
183.  This case is before the Court on respondent's motion to

_____

[1]     Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the years at issue.
All Rule references are to the Tax Court Rules of Practice and
Procedure.

dismiss this case for lack of jurisdiction insofar as it relates to adjustments arising from petitioners' interest in J & S World Nurseries Limited Partnership (Nurseries). At the time of the filing of the petition herein, petitioners resided in Simi Valley, California. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

During the years 1985 and 1986, petitioners were limited partners in Nurseries. Their interest was .45 percent and there were over 100 partners in Nurseries. On March 12, 1993, Form 870-P(AD), Settlement Agreement for Partnership Adjustments, was executed by Harvey Minars, tax matters partner (TMP) for Nurseries and by Robert Rosenblatt, Associate Chief, New York City Appeals on behalf of respondent. The Form 870-P(AD) represented an offer made by the TMP of Nurseries and provided that, if accepted by the Commissioner,

> the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted.

> This offer is made by the [TMP] and binds all non notice and other partners to the terms of the agreement for whom the [TMP] may act under section 6224(c)(3) * * *

In addition, the Form 870-P(AD) provided for the waiver of the restrictions on assessment and collection of any deficiency

attributable to partnership items.  See sec. 6225(a).

Petitioners did not file a statement denying the settlement

authority of Nurseries' TMP under section 6224(c)(3)(B) at least

30 days prior to the date on which the settlement agreement was

entered into by the Commissioner and Nurseries' TMP.  See section

301.6224(c)-1T(a)(2), Temporary Proced. & Admin. Regs., 52 Fed.

Reg. 6786 (Mar. 5, 1987).  Indeed, at that time, petitioners were

unaware of the partnership proceeding.

By letters dated June 14, 1993, and August 9, 1993,

petitioners were advised by respondent of changes made to their

1985 and 1986 joint Federal income tax returns as a result of the

settlement of the partnership items of Nurseries as they flowed

through to petitioners' 1985 and 1986 returns.  The computation

form attached to the letter for 1985 reflected that petitioners'

claimed ordinary loss of $74,978 with respect to Nurseries was

disallowed except for a $25,000 settlement allowance, that a

deficiency was computed in the amount of $18,429, that no

additions or penalties were being asserted, but that interest was

to be computed at 120 percent of the normal rates pursuant to

section 6621(c).  Similarly for 1986, the petitioners' claimed

loss for Nurseries of $11,309 was disallowed resulting in a

deficiency of $9,995.  These deficiencies and appropriate

interest were subsequently assessed, and petitioners began making

arrangements to pay them.

During 1985 and 1986, petitioners were also partners in a partnership entitled Hambrose Leasing 1985-4 (Hambrose). The details of the structure of Hambrose and of petitioners' percentage investment in Hambrose are not a part of the record, but it appears that Hambrose was not a TEFRA partnership. On May 26, 1995, respondent issued notices of deficiency with respect to petitioners' 1985 and 1986 Federal income tax returns determining deficiencies in income taxes of $11,055 for 1985 and $25,573 for 1986, plus additions to tax under section 6653(a)(1)(A) and (B), and section 6661(a) in connection with the adjustment of petitioners' claimed losses attributable to Hambrose. In addition, in the notices of deficiency respondent determined that interest was to be computed under section 6621(c) at 120 percent of normal rates.

A timely petition was filed with respect to the notices of deficiency. However, petitioners attempted to place into issue the deficiencies arising out of the adjustments made to their 1985 and 1986 returns in connection with their investment in Nurseries. Respondent moved to dismiss that aspect of the case for lack of jurisdiction and to strike all references in the petition to Nurseries. Petitioners contend that they were never notified about the examination and settlement of Nurseries and they therefore deserve an opportunity to litigate the deficiencies related to Nurseries. The resolution of this issue

requires a consideration of the unified audit and litigation procedures enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324.

The TEFRA partnership provisions were enacted in response to the administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners. Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982). As we stated in an earlier case interpreting the TEFRA partnership provisions:

> By enacting the partnership and audit litigation procedures, Congress provided a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. Congress decided that no longer would a partner's tax liability be determined uniquely but "the tax treatment of any partnership item [would] be determined at the partnership level." Sec. 6221. [Maxwell v. Commissioner, 87 T.C. 783, 787 (1986).]

A "partnership item" is defined as an item that is more appropriately determined at the partnership level than at the partner level. Sec. 6231(a)(3). Partnership items include each partner's proportionate share of a partnership's aggregate items of income, gain, loss, deduction, or credit. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. The treatment of partnership items is decided at the partnership level, rather than in separate proceedings involving individual

partners.  See secs. 6221-6223; see also <u>Harris v. Commissioner</u>, 99 T.C. 121, 125 (1992), affd. 16 F.3d 75 (5th Cir. 1994).

Section 6223(a) generally provides that the Commissioner shall mail to each partner notice of the beginning of an administrative proceeding (NBAP) at the partnership level with respect to a partnership item, as well as the final partnership administrative adjustment (FPAA) resulting from any such proceeding.  However, the requirement for providing notices under section 6223(a) does not apply to a partner of a partnership if the partnership has more than 100 partners and the partner has less than a 1-percent interest in the profits of the partnership.  See sec. 6223(b)(1).  Section 6223(g) requires the TMP to keep each partner informed of all administrative and judicial proceedings for the adjustment at the partnership level of partnership items.  Taking petitioners' statements at face value, we presume that Nurseries' TMP failed to advise petitioners of Nurseries' partnership administrative proceeding.  However, section 6230(f) provides that the failure of the TMP to forward copies of the NBAP or FPAA to a partner, or otherwise fail to fulfill his responsibilities, does not affect the applicability of partnership proceedings or adjustments to such partner.  As we have said elsewhere in regard to the alleged unfairness surrounding the FPAA:

> Be that as it may, that is the procedure which the
> Congress has created, and we have no authority to

rewrite the statute in order to change procedure and substitute our own idea of "fairness." If there is any such inequity, it is up to Congress to revise the law. * * * [Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 566 (1989).]

In regards to the settlement of a partnership proceeding, section 6224(c)(3) provides that in the absence of fraud, malfeasance, or misrepresentation of fact, a TMP may bind a nonnotice partner by any settlement agreement entered into by the TMP and in which the TMP expressly states that such agreement shall bind the other partners.

Once a partnership proceeding is finalized through settlement, computational adjustments at the partner level are made to record the change in the partners' tax liability that results from adjustments in the settlement to partnership items. The accuracy of the computational adjustments may be contested, as provided in section 6230(c), but the treatment of the partnership items under the settlement is conclusive. Sec. 6230(c)(4).[2] However, the Code does not provide this Court with jurisdiction of a section 6230(c) type of judicial proceeding.

Therefore it can be concluded that we have no jurisdiction to consider anything pertaining to partnership items of Nurseries. Petitioners, as nonnotice partners of Nurseries, were

---

[2] A proceeding under sec. 6230(c) requires, inter alia, a timely claim for refund within 6 months of the notice of computational adjustment. Petitioners did not file such a document.

bound by the settlement entered into between Nurseries' TMP and the Commissioner, and they have failed to bring an appropriate and timely section 6230 proceeding.

We sympathize with petitioners, but must point out that petitioners are not victims of respondent or the Internal Revenue Code. They are victims of unscrupulous purveyors of tax shelters who, having sold scam investments to petitioners, failed to follow procedures and disappeared with the funds. Petitioners are also victims of their own greed and naivete by investing in these scams, obtaining outrageous deductions and credits without paying attention to the details of the tax laws, nor putting into place some sort of check and balance system to monitor their own investments.

Respondent's motion to dismiss will be granted, and all references to Nurseries in the petition will be stricken.

An appropriate order

will be issued.